FILED
IN CLERKS OFFICE

2022 JAN 10 PM 12: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

Angel Santos W1046
M.C.C
1 adminstrationrd
Bridgewater MA
02330

United State District court
Clerk office
1 courthouse way #23000
Boston, MA
02210

Jan/7/2022

defendant files Attachment [illegible] [illegible] [illegible] filing

Lowell Superior court not [illegible] due district court

defendant [illegible] [illegible] judicial [illegible]

[illegible] situation [illegible] [illegible] [illegible] [illegible]

FILED
IN CLERKS OFFICE
2022 JAN 10 PM 12: 34
U.S. DISTRICT COURT
DISTRICT OF MASS.

[illegible] demands judicial Assurance

[illegible] not viable [illegible] outstanding Appeal [illegible] [illegible] fabricated case not properly disposed due fabricated [illegible] [illegible] Appear [illegible]

Angel Santos
defendant

MICR 2012006
Lowell Superior
Court Middlesex

clerk
Attached
Newly discovered evidence
with
Prosecutor false filing
omitting factor

newly discovered evidence
reveal

Attached Prosecutor false
Presenting
Lowell Superior Twenty years
4/28/16
Judge Cabin Sprague
Passed Fabrication

Attached
false presented a prosecutor
grand jury
June / 2012 MICR 2012006
Fabricated case
without judicial review
Lack Prosecution ditative
judicial process

Anemydiscrapredevicene

LOWELL GENERAL HOSPITAL
295 Varnum Avenue Lowell, Massachusetts 01854-2193 Phone: 978-937-6000

Patient: GONZALEZ, LUIS E
MR#: 185776

DOB: 01/26/1990
Location: ED
PT Type: Emergency

Permar.

## Chemistry

### Cardiac Tests

09/04/2010 03:41 EST CK Relative Index:

| | CKMB(nGm/ml) | RI |
|---|---|---|
| Non-AMI: | < or = 5 | NA |
| Gray Zone | > 5 | < or = 4 |
| AMI: | > 5 | > 4 |

09/04/2010 03:41 EST Troponin I:
Troponin I is released 4 - 8 hours after onset of symptoms of Myocardial Infarction, peaks at 12 - 16 hours and remains elevated 5 - 9 days.
0.000 - 0.045 nGm/ml Normal range.
0.060 - 1.500 nGm/ml Indeterminate. Clinical correlation advised. Suggest repeat test in 3 - 6 hours.
> 1.500 nGm/ml Consistent with Myocardial injury.

### Drugs (Urine)

Collected Date: 09/04/2010
Collected Time: 03:41 EST

| Procedure | | Ref Range | Units |
|---|---|---|---|
| U Amphetamine Scrn | Screen Positive A | [1000 nGm/mL Cutoff] | |
| U Barbiturate Scrn | Screen Negative | [200 nGm/mL Cutoff] | |
| U Benzodiazepine Scrn | Screen Negative | [200 nGm/mL Cutoff] | |
| U Cannabinoid Scrn | Screen Positive A | [50 nGm/mL Cutoff] | |
| U Cocaine Scrn | Screen Positive A | [300 nGm/mL Cutoff] | |
| U Ethanol | 25 | [0-49] | mg/dL |
| U Ethanol Interp | Negative | | |
| U Opiate Scrn | Screen Negative | [2000 nGm/mL Cutoff] | |
| Confirm Positive # | Confirm Upon Request | | |

09/04/2010 03:41 EST Confirm Positive:
Urine Drug Screening results are intended for medical management and treatment purposes only.

negative

newly discovered evidence

LOWELL GENERAL HOSPITAL
295 Varnum Avenue Lowell, Massachusetts 01854-2193 Phone: 978-937-6000

Permanent Medical Record

Patient: GONZALEZ, LUIS E
MR#: 185776

DOB: 01/26/1990
Location: ED
PT Type: Emergency

## Emergency Documentation

Document Name: ED Note-Physician
Document Status: Auth (Verified)
Performed By: Kareores MD, Christopher 09/04/2010 04:25 EST
Authenticated By: Kareores MD, Christopher 09/04/2010 05:31 EST

### Past Medical/ Family/ Social History

**Medical history:** Negative.
**Surgical history:** Negative.
**Family history:** Not significant.
**Social history:** Alcohol: Denies alcohol use, Tobacco: Denies tobacco use, Drugs: Denies drug use, Occupation: Unemployed, Family/social situation: Unmarried.
**Problem list:** Include problem list.
No problem items selected or recorded.

### Physical Examination

**General appearance:** Within normal limits and mild distress.
**Immobilization:** Backboard in place and cervical collar in place.
**Skin:** Within normal limits. Warm. Dry. No pallor. No rash. Good skin turgor.
**Facial:** Within normal limits
**Problem area examination:** Erythema, bleeding.
**Eye:** Within normal limits. Pupils equal, round, and reactive to light. Extraocular movements intact. Normal conjuctiva.
**Ears, nose, mouth and throat:** Within normal limits. Tympanic membranes clear. Oral mucosa moist. No pharyngeal erythema or exudate.
**Ears, nose and throat:** WNL
**Airway:** Patent.
**Respiratory:** Respirations nonlabored. sl. decreased on L. with mild upper crepitus.
**Scalp:** Tenderness L. inferior-occipital - GSW entrance wound abrasion by L. temporal area.
**Neck:** Within normal limits, supple, trachea midline, no tenderness.
**Rectal:** Within normal limits
**Abdominal:** Within normal limits. Soft. Nontender. Non distended. Normal bowel sounds. No organomegaly. no rebound or guarding.
**Genitalia:** Within normal limits. No tenderness. No discharge. Normal external genitalia.
**Back:** Within normal limits. Nontender. Normal range of motion. Normal alignment.
**Pelvis:** Within normal limits. No tenderness.
**Chest wall:** No deformity. small caliber GSW entrance by inferior L. mid axilla area.
**Extremity:** Normal range of motion. Normal tone. No swelling. No tenderness. small caliber entrance to L. inferior medial deltoid area.

Legend: @ = Corrected A = Abnormal C = Critical L = Low H = High * = Footnote # = Interpretive Data R = Ref Lab

tient: GONZALEZ, LUIS E
N: 185776

Chart Request ID: 8781337
Print Date: 5/7/2012 07:52

Page 3 of 58

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

*/s/ Todd M. Blume*
Todd M. Blume (BBO No. 674608)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2503
todd.blume@mass.gov

Dated: October 19, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the petitioner at the address below on October 19, 2020, by first-class mail, postage pre-paid, to him as follows:

Angel Santos
W104612
Old Colony Correctional Center
1 Administration Road
Bridgewater, MA 02324

*/s/ Todd M. Blume*
Todd M. Blume



THE COMMONWEALTH OF MASSACHUSETTS
GOVERNOR'S COUNCIL
ROOM 184 • STATE HOUSE • BOSTON, MA 02133
(617) 725-4016

April 2, 2012

Honorable John H. Lynch
Governor of New Hampshire
State House
Concord, New Hampshire 03301

Re: Angel M. Santos, DOB: 03/15/89/Rendition

Dear Governor Lynch:

Enclosed herewith is the warrant signed by Governor Deval L. Patrick for the return of the above individual.

If and when you sign the warrant, in order to allow the agent from this Commonwealth to proceed, will you be kind enough to notify:

Honorable Gerard T. Leone, Jr.
District Attorney, Middlesex County
Middlesex Superior Courthouse
200 Trade Center – 3rd Floor
Woburn, MA 01801
Attn.: Martha Coravos, Assistant District Attorney
Tel. No.: (781) 897-8715

Thank you for your assistance in this matter.

Very truly yours,

Valerie McCarthy
Valerie McCarthy
Executive Secretary
Pro Tem

Enclosures
Copy (2) to: As above & file

AP-15-539
Commonwealth Appeal Court

say anything," which she apparently took as a threat which she reported to the police. The defense argues that the Commonwealth presented insufficient evidence to sustain the intimidation of a witness charge.

false presentation imposed detached process

## ARGUMENT

### I. NO ONE PROPERLY IDENTIFIED MR. SANTOS AS THE SHOOTER, NOR WAS ANY OTHER PHYSICAL OR TESTIMONIAL EVIDENCE OFFERED TO SUSTAIN HIS CONVICTION ON THE CHARGES OF ASSAULT TO MURDER OR THE GUN CHARGES.

#### A. Jason Hernandez's identification of Mr. Santos as the shooter should not have been admitted.

As the Commonwealth contended at trial, "identification is going to be a key issue in this case, obviously, given that we only have one witness identifying the defendant as the alleged shooter." (Tr. IV: 5) The one witness was Jayson Hernandez. There are two main issues with the admissibility and reliability of Jayson's testimony.

First, Jayson never had identified Mr. Santos as the shooter before trial and had never seen him before the night of the incident. *Compare Commonwealth v. Crayton*, 47 Mass. 228, 245-46 (2014) In *Crayton*, the Supreme Judicial Court reasoned "in-court identification is

comparable in its suggestiveness to a show-up identification," and may even be more suggestive because "where the prosecutor asks the eyewitness if the person who committed the crime is in the courtroom, the eyewitness knows that the defendant has been charged and is being tried for that crime." Furthermore, "the presences of the defendant in the courtroom is likely to be understood by the eyewitness as confirmation that the prosecutor, as a result of the criminal investigation, believes that the defendant is the person whom the eyewitness saw commit the crime." *Id.* at 237

Although the court in *Crayton* did not reach this conclusion, the defense argues that this presumption—that a first-time, in-court identification helps confirm for the eyewitness that the defendant is the person who committed the crime—applies to the jury as well. If, as in this case, the eyewitness is unreliable for other reasons (e.g., he is immunized and thus has a reason to cooperate with the Commonwealth or, more importantly, had testified under oath before a grand jury that he did not see the shooter's face that night at all, and had never identified him before trial).

Commonwealth Appeal Court
AP 18534

Id. In this case, the trial judge, after explaining what a grant of immunity was, stated:

> In assessing the credibility of a witness you may consider whether the witness has received a grant of immunity or whether he has been promised or has received some benefit that may have induced him to testify or to testify in a particular manner. These are some of the tools that are at your disposal to resolve the disputed issues of fact in this case.

(Tr. IV:53.) The trial judge also explained generally how to assess the credibility of witnesses, including how the jury can evaluate prior inconsistent statements. (Tr. IV: 51-54.) Here, as in DePina, "[t]he instructions were more than sufficient to inform the jury of the dangers of exclusive reliance on immunized witness testimony." Id.

IV. SUFFICIENT EVIDENCE WAS PRESENTED THAT THE DEFENDANT WAS THE SHOOTER, INTENDED TO MURDER THE VICTIM WITH A FIREARM WHEN HE FIRED MULTIPLE SHOTS AND THEN STOOD OVER THE VICTIM AND ATTEMPTED TO FIRE MORE SHOTS, AND THEN ENGAGED IN WITNESS INTIMIDATION WHEN HE TOLD THE VICTIM NOT TO TALK TO THE POLICE AT THE HOSPITAL.

The defendant alleges there was insufficient evidence for the jury to convict on all charges. (D. Br. 35-42.) Besides asserting that the immunized

new discarded evidence

LOWELL GENERAL HOSPITAL
295 Varnum Avenue Lowell, Massachusetts 01854-2193 Phone: 978-937-6000

Permanent Medical Record

Patient: GONZALEZ, LUIS E
MR#: 185776

DOB: 01/26/1990
Location: ED
PT Type: Emergency

## Emergency Documentation

Document Name: Depart Summary
Document Status: Modified
Performed By: Atkinson RN, Brenda 09/04/2010 07:49 EST
Authenticated By:

### PHYS DOC NOTES

Patient: **GONZALEZ, LUIS E** **MRN: 185776** **FIN: 002064158**
Age: **20 years** Sex: **Male** DOB: **01/26/90**
Author: **Kareores MD, Christopher**
Attachments: **None**

### Basic Information

**Time seen:** Date & time 09/04/10 03:27:00.
**History source:** Patient, EMS.
**Arrival mode:** Ambulance-BLS.
**Prehospital treatment:** Per nursing notes, ALS protocol.
**Vital signs:** (Date Range: 09/03/10 0:00 - 09/04/10 4:16 ).
**Medications:** .

Medication Orders

cefazolin, Dose: 2 Gm, Injection, IV Piggyback, Once, STAT, Start Date/Time: 09/04/10 4:16:00 EDT, Dilute in 100 mL D5W. Infuse over 30 minutes.
tetanus toxoid (Td - Tetanus Diptheria) (tetanus toxoid), Dose: 0.5 ml, Injection, IM, Once, Routine, Start Date/Time: 09/04/10 5:00:00 EDT

**Allergies:** .

No active allergies have been recorded.

**Immunizations:** Unknown.
**History limitation:** None.
**Notes:** Chief Complaint from Nursing Triage Note : (Date Range: 09/03/10 0:00 - 09/04/10 4:16 ).

### History of Present Illness

The patient is a 20 years old Male who presents with multiple gunshot wounds. The occurrence was 30 minutes prior to arrival. Location wound: Entrance wound: L. back scalp; L. axilla and L. deltoid. The degree of bleeding is minimal. The degree of pain is minimal. There are mitigating factors including backboard, cervical collar, oxygen and intravenous fluids:. Firearm: unknown. The range was unknown. Circumstances: unknown. Pt required needle decompression on L. for tachycardia/hypoTN and decreased breath sounds - Pt states heard ? 3 gunshots and felt he got hit - saw gunman who came towards him and Pt states he hit gunman who left..

Legend: @ = Corrected A = Abnormal C = Critical L = Low H = High * = Footnote # = Interpretive Data R = Ref Lab

Patient: GONZALEZ, LUIS E
MRN: 185776

Chart Request ID: 8781337
Print Date: 5/7/2012 07:52

Page 19 of 58

Q. Smoking marijuana?
A. Excuse me?
Q. Smoking marijuana?
A. No, I don't smoke.
Q. You don't smoke marijuana?
A. No.
Q. Were you doing anything else besides drinking beer, drinking anything else?
A. Just beer.
Q. And fair to say that Luis was drinking?
A. Yes.
Q. And Junior was drinking?
A. Yes.
Q. Carlos?
A. Yes.
Q. It's fair to say that everybody there was drinking?
A. Yes.
Q. And you testified that approximately twenty-five people were at her apartment, correct?
A. Yes.
Q. Now you were fairly familiar with the apartment on September 3rd and September 4th, 2010, weren't you?
A. Yes.
Q. You'd been there a number of times, right?
A. Yes.